UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROIL, INC.,<br>2708 Virginia Avenue, N.W.<br>Washington, D.C. 20037,<br><br>Plaintiff,<br><br>v.<br><br>EXXONMOBIL OIL CORPORATION<br>3225 Gallows Road<br>Fairfax, Virginia 22037<br><br>and<br><br>EXXONMOBIL CORPORATION<br>5959 Las Colinas Blvd.<br>Irving, Texas 75039-2298<br><br>and<br><br>ANACOSTIA REALTY, LLC.<br>6827 – B Commercial Drive<br>Springfield, Virginia 22151,<br><br>Defendants. | **FILED**<br>SEP 29 2009<br>Clerk, U.S. District and<br>Bankruptcy Courts<br><br>Case No.:<br><br>Case: 1:09-cv-01860<br>Assigned To : Urbina, Ricardo M.<br>Assign. Date : 9/29/2009<br>Description: General Civil |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR INJUNCTIVE AND DELCARATORY RELIEF AND DAMAGES

Plaintiff Metroil, Inc. ("Metroil"), through its undersigned attorneys, hereby files this Complaint against Defendants ExxonMobil Oil Corporation ("ExxonMobil Oil"), ExxonMobil Corporation ("ExxonMobil") and Anacostia Realty, LLC ("Anacostia") and states:

### JURISDICTION

1.   This Complaint arises under the Petroleum Marketing Practices Act ("PMPA"); 15 U.S.C. §§ 2801 *et seq.*; under the District of Columbia Retail Service Station Amendment Act of 2009, incorporated in D.C. CODE §§ 36-301 *et seq.*; and under common law. This Court has

1

subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00; and pursuant to 15 U.S.C. § 2805(a), in that Plaintiff's franchise has been nonrenewed and terminated in violation of the PMPA.

## VENUE

2.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events giving rise to this claim occurred in this District and the property that is the subject of this action is located here. Venue is also proper in this District pursuant to 15 U.S.C. § 2805(a).

## THE PARTIES

3.  Metroil is a District of Columbia corporation registered and authorized to do business in the District of Columbia, with its principal place of business located at 2708 Virginia Avenue, N.W., Washington, D.C. 20037.

4.  ExxonMobil Oil is a corporation organized and existing under the laws of the State of New York with principal places of business in Texas and Virginia. It is a wholly owned subsidiary of ExxonMobil and regularly does business in the District of Columbia.

5.  ExxonMobil is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Texas. It is the world's largest integrated oil and gas company with revenues in 2008 of approximately $442,851,000,000.00. ExxonMobil regularly does business in the District of Columbia.

6.  Anacostia is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Springfield, Virginia. Since its organization on or about May 11, 2009, Anacostia has regularly done business in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

7.  Beginning in 2003, Metroil has operated the service station situated at 2708 Virginia Avenue, N.W. in the District of Columbia as an "Exxon" branded dealer. Metroil has leased the service station premises and has been supplied with branded "Exxon" motor fuel pursuant to the terms of three-year franchise agreements (the "Franchise Agreements") entered into between it and ExxonMobil Oil. The Franchise Agreements are form agreements drafted by ExxonMobil Oil that are presented to Metroil and other "Exxon" branded dealers on a take-it-or-leave-it basis and are nonnegotiable. Until August 6, 2009, title to the service station premises was held by ExxonMobil.

8.  Throughout Metroil's tenure as an "Exxon" branded dealer, ExxonMobil Oil stressed to Metroil and its other "Exxon" branded dealers the uniqueness of its franchise system, which it has consistently represented to be the most powerful franchise system ever developed.

9.  Through the terms of its nonnegotiable Franchise Agreement, ExxonMobil Oil has vested itself with significant discretion regarding most if not all aspects of its franchise relationships with Metroil and its other "Exxon" branded dealers, including, by way of example only, obtaining substantial access to and control over its franchisees' bank accounts; controlling the timing and manner of delivery of products to its franchisees and determining what products will be sold by its franchisees; mandating the training required of its franchise dealers on an ongoing basis; establishing staffing and insurance requirements; exercising control over all retail credit programs; and reserving to itself discretion to approve or deny all dealer alterations to the service station premises.

10.  Metroil agreed to grant ExxonMobil Oil the extensive discretion and control that it insisted upon through the terms of its nonnegotiable Franchise Agreements in reliance upon ExxonMobil Oil's representations concerning the uniqueness of its franchise system and in

reliance upon Metroil's faith in ExxonMobil Oil's ability to perform its obligations with respect to the continued successful operation of its unique system.

11.     In 2008, ExxonMobil and ExxonMobil Oil announced their intention to diminish their involvement in downstream motor fuel distribution by selling off service stations that they own to distributors, and by assigning Franchise Agreements with independent dealers such as Metroil to the distributors to whom stations were sold. ExxonMobil and ExxonMobil Oil announced that they intended to effectuate this sell-off within a two-year period.

12.     The announcement caused grave concern to many of ExxonMobil Oil's lessee dealers in the District of Columbia, including Metroil. They feared that the assignment of their Franchise Agreements to distributors – which commonly purchase and resell multiple brands of motor fuel and compete directly with independent dealers through stations that the distributors themselves operate either with their own employees or through commission agents – would substantially lessen the dealers' ability to compete in the marketplace. In addition, Metroil and other lessee dealers feared that the distributors to whom their Franchise Agreements would be assigned would substantially increase their rents and the prices that they were required to pay for motor fuel, so that the distributors could force the dealers out of business and convert their locations to direct operation by distributor employees or commission agents. Finally, the dealers feared that an acquiring distributor would lack the financial stability to serve as a reliable and effective supplier of motor fuel, particularly after accumulating significant debt through the purchase of multiple service stations from the ExxonMobil entities for many millions of dollars.

13.     The risk that the dealers would be priced out of business to be replaced by company employees or commission agents did not exist so long as ExxonMobil Oil remained their franchisor, and their Franchise Agreements were not assigned to distributors. By statute, the District of Columbia mandates that "no producer, refiner, or manufacturer of motor fuels"

may operate a service station within the District of Columbia with its own employees or through commission agents. *See* D.C CODE § 36-302.02. No such prohibition exists with respect to distributors, so that the risk of predatory conduct arose only if the dealers' franchise relationship with ExxonMobil Oil was assigned to one or more distributors.

14. The Council of the District of Columbia also was concerned by the ExxonMobil entities' stated intention to sell the dealers' stations and assign their Franchise Agreements to distributors because of the adverse effect that such sales and assignments would have on competition and on the price paid by consumers for motor fuel within the District of Columbia, and because such sales and assignments would ultimately diminish the number of full-service stations available to serve District residents. As a result, the Council introduced and enacted the Retail Service Station Amendment Act of 2009 ("the Act"). The Act was passed by the Council and signed by the Mayor in May 2009. On June 1, 2009, the Act was transmitted for Congressional review and its effective date is July 18, 2009.

15. The Act is intended to protect District citizens and independent dealers, including Metroil, from the adverse and anticompetitive consequences stated above by requiring suppliers to offer independent dealers a right of first refusal before selling their stations to a third party, such as a multi-brand distributor. Because the Council recognized the immediacy of the peril to independent dealers and the immediacy of the threat to District residents, the Act provides that only sales "of leased marketing premises made pursuant to a contract which has been executed by duly authorized representatives of the parties prior to April 1, 2009" would be exempted from its coverage and effect.

16. Upon information and belief, the ExxonMobil entities and the local distributor community, including the principal owner of the yet-to-be-formed Anacostia, Eyob Mamo, were aware of the Council's consideration of the Act and its provisions at least as early as February

2009. Upon information and belief, they were also aware well prior to the Act's April 1, 2009 operative date that it expressly provided that it would exempt from its coverage only sales of leased marketing premises made pursuant to a contract which had been executed by duly authorized representatives of the parties prior to that date.

17.     On March 6, 2009, ExxonMobil Oil wrote Metroil extending its Franchise Agreement, which was scheduled to expire on June 30, 2009, until July 31, 2009. Thereafter, ExxonMobil Oil presented Metroil with a new three-year Franchise Agreement effective through June 30, 2012, which Metroil executed and returned to ExxonMobil Oil on April 8, 2009. Since then, ExxonMobil Oil has taken no action with respect to the new Franchise Agreement that it drafted and presented to Metroil.

18.     On or about May 11, 2009, more than a month after the Act's operative date, Anacostia was formed as a Delaware limited liability company.

19.     On June 12, 2009, ExxonMobil and Anacostia executed a Special Warranty Deed, effective as of August 6, 2009, pursuant to which ExxonMobil purported to sell and convey to Anacostia various service station properties located within the District Columbia, including the service station premises operated by Metroil.

20.     Although the Special Warranty Deed, which was subsequentially filed of record, refers to the Purchase and Sale Agreement (the "PSA") between the parties as "effective as of December 19, 2008," no copy of the PSA was filed as of record.

21.     In mid-June, 2009, Metroil and other "Exxon" branded dealers in the District of Columbia were advised orally by representatives of ExxonMobil Oil and Anacostia that their service station locations had been sold to Anacostia and that their Franchise Agreements had been assigned to Anacostia. When the dealers complained that their rights under the Act

appeared to have been ignored, the dealers were orally advised that their stations had been sold in December 2008, prior to the Act's operative date of April 1, 2009.

22.     The dealers' concern about the purported sale of their stations and assignment of their Franchise Agreements to Anacostia was exacerbated by that fact that Anacostia was owned and controlled by DAG Petroleum, LLC ("DAG") or its principal, Mr. Mamo. DAG, a large multi-brand distributor, had previously acquired "Shell" branded dealer-operated stations in the District of Columbia from Shell's subsidiary, Motiva Enterprises, LLC. Following the assignment of the Shell dealers' lease and supply agreements to DAG, a number of the dealers were driven out of business and replaced by DAG with commission agents.

23.     In order to determine whether or not the announced transaction in fact was in compliance with the Act, Metroil, through counsel, wrote Anacostia's counsel on August 3, 2009, requesting that Metroil be provided an opportunity to review the PSA and any other documents upon which Anacostia based its contention that the purchase of the station property occurred in December 2008. By letter dated August 4, 2009, Anacostia's counsel responded that Anacostia would not provide access to the PSA because it had entered into a "binding confidentiality agreement" with ExxonMobil.

24.     Dissatisfied with Anacostia's response and refusal to provide access to the PSA, Metroil, through counsel, made repeated written requests of ExxonMobil during August and September, 2009 that it be permitted an opportunity to review the PSA and any other documents relied upon by ExxonMobil if it contended that the sale of the service station properties occurred prior to April 1, 2009. ExxonMobil, however, asserted that the PSA was "subject to a confidentiality requirement," and would only produce the cover page and execution pages of what appears to be a 58 page document. ExxonMobil continues to refuse to make any further disclosure concerning the terms of the PSA despite Metroil's repeated protestations.

25. In view of circumstances surrounding the Anacostia and ExxonMobil transaction currently known to Metroil, and in view of the shared reluctance of ExxonMobil and Anacostia to reveal the substance of their transaction and their agreement to conceal and withhold all pertinent information concerning the transaction, it is Metroil's good faith belief that the transaction was not in compliance with the Act and that Defendants have conspired wrongfully to conceal their violation of the Act.

26. In the brief period that Anacostia has replaced ExxonMobil Oil as Metroil's supplier, Metroil's fears and concerns regarding Anacostia's intentions and capabilities have begun to be realized. After refusing to deliver product to Metroil on a C.O.D. basis, and requiring instead access to Metroil's bank account as a means of payment for the delivery of motor fuel, Anacostia withdrew excessive funds from Metroil's account without notice or explanation. Further, the high prices charged by Anacostia to Metroil for motor fuel have reduced Metroil's ability to compete in the marketplace to Metroil's detriment.

27. Despite the fact that Metroil's preexisting Franchise Agreement expired on June 30, 2009, and was only extended by ExxonMobil Oil through July 31, 2009, Metroil has received no new Franchise Agreement, other than the Franchise Agreement presented to it by ExxonMobil that it executed on April 8, 2009, which apparently was never executed by ExxonMobil Oil. Thus, in direct contravention of the notice and renewal requirements of the PMPA, Metroil has been placed in the position of a tenant holding over without a documented Franchise Agreement.

## COUNT I

## VIOLATION OF THE DISTRICT OF COLUMBIA RETAIL SERVICE STATION AMENDMENT ACT OF 2009

28. Metroil alleges each and every allegation set forth in paragraphs 1-27, inclusive, and incorporates them herein by reference.

29. Defendants ExxonMobil and ExxonMobil Oil are in violation of the Act by reason of their failure to provide a right of first refusal to Plaintiff and others as required by Sec. 5 A-302 of the Act. As an immediate and proximate result of these Defendants' violation of the Act, Plaintiff has suffered or will suffer damages in an amount to be determined, but believed to be well in excess of One Hundred Thousand Dollars ($100,000.00).

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendants ExxonMobil and ExxonMobil Oil:

a. Granting it temporary and permanent injunctive relief including requiring Defendants to honor Plaintiff's right of first refusal pursuant to Sec. 5 A-302 of the Act;

b. Declaring that sale of service station properties to Defendant Anacostia violated Sec. 5 A-302 of the Act;

c. Awarding Plaintiff damages in excess of One Hundred Thousand Dollars ($100,000.00) against Defendants ExxonMobil and ExxonMobil Oil;

d. Awarding Plaintiff its costs of suit and reasonable attorneys' fees; and

e. Granting such additional and further relief as this Court deems just and proper.

## COUNT II

## CIVIL CONSPIRACY

30. Metroil alleges each and every allegation set forth in paragraph 1-27 inclusive, and incorporates them herein by reference.

31.     Defendants entered into an agreement to violate the Act and to conceal their violation of the Act, and performed overt acts pursuant to and in furtherance of their common scheme, to the direct and proximate injury of Plaintiff, which acts included (i) entering into an illegal sale and conveyance of service station properties in violation of the rights of Plaintiff and others under the Act; (ii) entering into the "confidentiality agreement" in an attempt to conceal their violation of the Act; and (iii) misrepresenting and concealing from Plaintiff and other interested parties the true nature and substance of their illegal transaction.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against all Defendants:

a.     Granting Plaintiff temporary and permanent injunctive relief including requiring Defendants to honor Plaintiff's right of first refusal pursuant to Sec. 5 A-302 of the Act;

b.     Declaring that the sale of service station properties to Defendant Anacostia violated Sec 5 A-302 of the Act;

c.     Awarding Plaintiff damages in excess of One Hundred Thousand Dollars ($100,000.00) against Defendants;

d.     Awarding Plaintiff punitive damages;

e.     Awarding Plaintiff its costs of suit and reasonable attorneys' fees; and

f.     Granting such additional and further relief as this Court deems just and proper.

## COUNT III

## VIOLATION OF THE PETROLEUM MARKETING PRACTICES ACT BY WILLFUL TERMINATION

32.   Metroil alleges each and every allegation set forth in paragraphs 1-27, inclusive, and incorporates them herein by reference.

33.   The relationship between Metroil and Defendant ExxonMobil Oil constitutes a petroleum marketing franchise relationship, termination of which is governed by the provisions of the PMPA, 15 U.S.C. §§ 2801-06.

34.   The assignment of Metroil's Franchise Agreement to Defendant Anacostia constitutes actual or constructive termination of Metroil's franchise in wrongful violation of 15 U.S.C. § 2802 because such sale and assignment is in violation of pertinent State law and will increase and has increased materially the burden or risk borne by Metroil under the Franchise Agreement, and will impair and has impaired materially Metroil's chance of obtaining return performance.  Among other things, (i) Defendant ExxonMobil Oil's purported assignment of the franchise and franchise relationship violated applicable provisions of State law, including the Act and District common law; (ii) Defendant Anacostia has not performed adequately the supply obligations previously performed by Defendant ExxonMobil Oil; (iii) the obligations of Defendant ExxonMobil Oil as a producer or refiner cannot be performed by a distributor not subject to the retail divorcement statute enacted by the District; and (iv) Metroil's Franchise Agreement, due to the discretion granted to Defendant ExxonMobil Oil, is personal to Defendant ExxonMobil Oil and cannot be assigned to another entity that lacks its financial and other resources and distributes other branded motor fuel products that directly compete with the "Exxon" branded motor fuel products marketed by Metroil.

35.   Defendant ExxonMobil Oil's actions as detailed in this Complaint are in willful violation of the PMPA.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant ExxonMobil Oil:

a. Declaring that ExxonMobil Oil's assignment of Plaintiff's franchise constitutes an actual or constructive termination of Plaintiff's franchise and is unlawful;

b. Awarding Plaintiff damages in excess of One Hundred Thousand Dollars ($100,000.00) against Defendant ExxonMobil Oil;

c. Awarding Plaintiff punitive damages in such amount that the Court deems appropriate for Defendant ExxonMobil Oil's willful violation of the PMPA;

d. Awarding Plaintiff its cost of suit and reasonable attorneys' fees; and

e. Granting such additional and further relief as this Court deems just and proper.

## COUNT IV

## VIOLATION OF THE PETROLEUM MARKETING PRACTICES ACT BY WILLFUL NONRENEWAL

36. Metroil alleges each and every allegation set forth in paragraphs 1-27, inclusive, and incorporates them herein by reference.

37. The relationship between Metroil and Defendant ExxonMobil constitutes a petroleum marketing franchise relationship, nonrenewal of which is governed by the provisions of the PMPA, 15 U.S.C. § § 2801-06.

38. The failure of ExxonMobil to execute the Franchise Agreement presented by it to Metroil or, alternatively, to provide Metroil timely notice of nonrenewal constitutes wrongful violation of 15 U.S.C. § § 2802 and 2804. The failure of Defendant Anacostia, following the purported assignment of Plaintiff's franchise, to renew said franchise or, alternatively, to provide Plaintiff timely notice of nonrenewal likewise constitutes wrongful violation of 15 U.S.C. §§ 2802 and 2804.

39.     The actions of Defendant ExxonMobil Oil and Defendant Anacostia as detailed in this Complaint are in willful violation of the PMPA.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant ExxonMobil Oil and Defendant Anacostia:

a.     Declaring that the failure to renew Plaintiff's franchise or, alternatively, to provide timely notice of nonrenewal is unlawful;

b.     Awarding Plaintiff damages in excess of One Hundred Thousand Dollars ($100,000.00) against Defendant ExxonMobil Oil and Defendant Anacostia;

c.     Awarding Plaintiff punitive damages in such amount that the Court deems appropriate for those Defendants' willful violation of the PMPA;

d.     Awarding Plaintiff its cost of suit and reasonable attorneys' fees; and

e.     Granting such additional and further relief as this Court deems just and proper.

## COUNT V

## BREACH OF CONTRACT

40.     Metroil alleges each and every allegation set forth in paragraphs 1-27 inclusive, and incorporates them herein by reference.

41.     Defendant ExxonMobil Oil's assignment of Plaintiff's Franchise Agreement is in breach of the said Franchise Agreement because the assignment materially increases the burden or risk imposed on Plaintiff under its Franchise Agreement and materially impairs its chance of obtaining return performance because, among other things, (i) Defendant ExxonMobil Oil's obligations under the Franchise Agreement cannot be performed by a distributor not subject to the District of Columbia retail divorcement statute; (ii) the Franchise Agreement, because of the

discretion granted to Defendant ExxonMobil Oil, is personal to Defendant ExxonMobil Oil and is non-assignable; and (iii) Defendant Anacostia is incapable of performing adequately under the Franchise Agreement because it is owned or controlled by a multi-brand distributor that competes in the marketplace directly with sellers of "Exxon" branded motor fuel, and Defendant Anacostia lacks the significant financial and extensive personnel assets of Defendant ExxonMobil Oil. As a result, said assignment has caused and will cause substantial and irreparable damage to Plaintiff.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant ExxonMobil Oil:

    a.    Granting Plaintiff temporary and permanent injunctive relief;

    b.    Declaring that Defendant ExxonMobil Oil's assignment of Plaintiff's Franchise was in breach of contract;

    c.    Awarding Plaintiff damages in excess of One Hundred Thousand Dollars ($100,000.00) against Defendant ExxonMobil Oil;

    d.    Awarding Plaintiff its costs of suit and reasonable attorneys' fees; and

    e.    Granting such additional and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of this action.

September 28, 2009

Respectfully submitted,

*James B Astrachan /PHG*
James B. Astrachan (No.483712)
Peter H. Gunst
Julia A. Carolan
Astrachan Gunst Thomas, P.C.
217 E. Redwood Street, Suite 2100
Baltimore, Maryland 21202

410.783.3550 telephone
410.783.3530 facsimile

www.agtlawyers.com

*Attorneys for Plaintiff*