# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

METROIL, INC.,                           :
                                         :
             Plaintiff,                  :        Civil Action No.:      09-1860 (RMU)
                                         :
             v.                          :        Re Document Nos.:   12, 13
                                         :
EXXONMOBIL OIL                           :
CORPORATION *et al.*,                    :
                                         :
             Defendants.                 :

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTIONS TO DISMISS

## I.  INTRODUCTION

This case is before the court on the defendants' motions to dismiss for failure to state a claim for which relief can be granted.  The plaintiff is the operator of an Exxon-branded retail gas station in the District of Columbia.  Defendants ExxonMobil Corporation ("ExxonMobil") and ExxonMobil Oil Corporation ("ExxonMobil Oil" and, together with ExxonMobil, "the ExxonMobil defendants") are engaged in the business of oil production and refining.  Until June 2009, the plaintiff leased the property on which its gas station is located from ExxonMobil and operated it pursuant to a franchise agreement with ExxonMobil Oil.  In June 2009, the ExxonMobil defendants sold the station property and assigned the franchise agreement to defendant Anacostia Realty, LLC ("Anacostia"), a gasoline distributor that owns and supplies several retail gas station properties in the District of Columbia.  The plaintiff alleges that the sale and assignment violated the District of Columbia Retail Service Station Amendment Act of 2009 ("RSSA"), D.C. CODE §§ 36-304.11 *et seq.*, the Petroleum Marketing Practices Act ("PMPA"),

15 U.S.C. §§ 2801 *et seq.*, and amounted to a breach of its franchise agreement.  Because the

RSSA was not in effect at the time of the transfer, and because the allegations contained in the

complaint are insufficient to establish a violation of the PMPA or a breach of the franchise

agreement, the court grants the defendants' motions to dismiss for failure to state a claim for

which relief can be granted.

## II.  BACKGROUND

### A.  The Statutory Framework

The PMPA regulates the circumstances in which petroleum refiners and distributors can

terminate franchise agreements with retail gas station operators.  *See generally* 15 U.S.C. §§

2801 *et seq.*  The statute applies to any contract that authorizes a franchisee to use the

franchisor's trademark, purchase the franchisor's branded motor fuel and occupy service station

property owned by the franchisor.  *Id.* § 2801(1).  The PMPA distinguishes between "franchise

agreements," which are individual contracts between franchisor and franchisee, and the

"franchise relationship," which it defines as the ongoing "motor fuel marketing or distribution

obligations and responsibilities . . . which result from" the individual franchise agreements

entered into by franchisors and franchisees.  *Id.* § 2801(1)-(2).  Under the PMPA, franchisors are

prohibited from terminating a franchise agreement or refusing to renew a franchise relationship

for any reason other than those specified in the Act.  *Id.* § 2802, 2804.  To enforce this

prohibition, the PMPA provides a franchisee who suffers wrongful termination or non-renewal a

private right of action against the breaching franchisor.  *Id.* § 2805.

Although the PMPA preempts state law regarding the termination and non-renewal of

covered franchise agreements, it expressly reserves to the states the power to regulate the

transferability and assignability of franchise agreements. *Id.* § 2806(a)-(b). Taking advantage of this reservation, in May 2009, the District of Columbia City Council approved the RSSA, which, *inter alia*, restricts the assignment of gas station franchise agreements by requiring a refiner planning to sell a leased service station and assign a franchise agreement to a gasoline distributor to provide a right of first refusal to the station's operator. D.C. CODE § 36-304.12. Following transmittal to Congress, the RSSA became law on July 18, 2009. *See id.* § 36-304.11.

### B.  Factual & Procedural Background

From 2003 until June 2009, the plaintiff operated an Exxon-branded retail gas station leased from ExxonMobil pursuant to a series of franchise agreements with ExxonMobil Oil. Compl. ¶ 7. In 2008, the ExxonMobil defendants allegedly began divesting themselves from the retail gas station market, selling gas station properties and assigning franchise agreements to distributors. *Id.* ¶ 11. The plaintiff alleges that on June 12, 2009, the ExxonMobil defendants sold the property on which the plaintiff's gas station is located and assigned their franchise agreement with the plaintiff to Anacostia. *Id.* ¶¶ 10, 21.

The plaintiff alleges that its franchise agreement was set to expire on June 30, 2009, but that in March 2009, ExxonMobil Oil extended the agreement until July 31, 2009. *Id.* ¶ 17. The plaintiff contends that neither Anacostia nor the ExxonMobil defendants have offered to enter into a new franchise agreement with the plaintiff. *Id.* ¶ 27. The plaintiff acknowledges, however, that "Anacostia has replaced ExxonMobil Oil as Metroil's supplier" and that Anacostia has supplied Metroil with motor fuel. *See id.* ¶ 26. The plaintiff asserts that since the assignment of the franchise agreement to Anacostia, Anacostia has required pre-payment for motor fuel, raised its prices and withdrawn excessive funds from the plaintiff's bank account. *Id.*

The plaintiff commenced this suit in September 2009, alleging that the ExxonMobil defendants violated the RSSA and the PMPA and breached the terms of the franchise agreement by assigning it to Anacostia. *Id.* ¶¶ 29, 34, 38, 41. Additionally, the plaintiff alleges that Anacostia conspired with the ExxonMobil defendants to violate the RSSA and violated the PMPA by failing to renew the plaintiff's franchise relationship. *Id.* ¶¶ 31, 39. In November 2009, the ExxonMobil defendants filed a motion to dismiss for failure to state a claim, *see generally* ExxonMobil Defs.' Mot., and Anacostia filed a motion to dismiss for failure to state a claim, or, in the alternative, for summary judgment,[1] *see generally* Def. Anacostia's Mot. With these motions now fully briefed, the court turns to the applicable legal standard and the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48

---

[1]     Because the court grants Anacostia's motion to dismiss for failure to state a claim, it need not consider the arguments for summary judgment, and it disregards the materials outside the pleadings submitted in support of and in opposition to the summary judgment portion of Anacostia's motion.

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002),

or "plead law or match facts to every element of a legal theory, *Krieger v. Fadely*, 211 F.3d 134,

136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).  That said, "it is possible

for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render

success on the merits impossible."  *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C.

Cir. 2000)

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing

courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of

facts in support of his claim [] would entitle him to relief").  A claim is facially plausible when

the pleaded factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at

556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at

556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the plaintiff's favor.  *Holy Land Found. for Relief & Dev. v. Ashcroft*,

333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

While many well-pleaded complaints are conclusory, the court need not accept as true inferences

unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.

*Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

**B.  The Court Grants the Defendants' Motions to Dismiss for Failure to State a Claim**

**1.  The Plaintiff Has Not Stated a RSSA or Civil Conspiracy Claim Because the RSSA Was Not In Effect at the Time of the Sale and Does Not Apply Retroactively**

In Count I of its complaint, the plaintiff asserts that the ExxonMobil defendants violated

the RSSA by selling its station property and assigning its franchise agreement to Anacostia

without offering the plaintiff a right of first refusal.  Compl. ¶ 29.  In Count II of its complaint,

the plaintiff alleges that Anacostia conspired with the ExxonMobil defendants to perpetrate the

aforementioned violation of the RSSA.  Compl. ¶ 31.  The defendants argue that the plaintiff's

allegations preclude relief under the RSSA because the sale at issue occurred before July 18,

2009, when the RSSA went into effect, and because the statute does not apply retroactively.

ExxonMobil Defs.' Mot. at 4; Def. Anacostia's Mot. at 15.  In response, the plaintiff concedes

that the sale preceded the effective date of the RSSA, but argues that the language of the RSSA

demonstrates that it applies retroactively to all transactions occurring after April 1, 2009.  Pl.'s

Opp'n to ExxonMobil Defs.' Mot. at 3-12; Pl.'s Opp'n to Def. Anacostia's Mot. at 6-9.

No court has yet decided whether the RSSA applies retroactively to sales that closed prior

to its effective date.  It is, however, a "well-settled principle" in the District of Columbia that

"retroactive applications of legislation are not to be presumed absent express legislative language

or other clear implication that such retroactivity was intended."  *Redman v. Potomac Place*

*Assocs., LLC*, 972 A.2d 316, 319 n.4 (D.C. 2009) (citing *Alpizar v. United States*, 595 A.2d 991,

993-94 (D.C. 1991)); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (noting that "the presumption against retroactive legislation is deeply rooted" in American jurisprudence).

The RSSA contains no language expressly dictating its retroactive application.  *See generally* D.C. CODE § 36-304.11-304.15.  The Act does, however, contain a provision, titled "Applicability," which specifies that its terms "shall not apply to any sale of leased marketing premises made pursuant to a contract which has been executed . . . prior to April 1, 2009."  *Id.* § 36-304.15.  The plaintiff asks the court to infer from this sentence that the RSSA applies to all transactions made pursuant to contracts executed on or after April 1, 2009, even if the transactions were completed before the RSSA became law.  *See* Pl.'s Opp'n to ExxonMobil Defs.' Mot. at 4.  The "Applicability" provision, however, purports to limit rather than expand the application of the statute.  *See* D.C. CODE § 36-304.15.  The more natural reading of this provision is that it excludes from the Act's coverage those transactions that, although they were completed after the RSSA became law, were anticipated by contracts executed before April 1, 2009.  Accordingly, the court declines the plaintiff's invitation to stretch the language of this provision to create an implication of retroactivity and concludes that the express terms of the RSSA do not support its retroactive application.

This construction of the statute is consistent with the legislative history set forth in the Committee Report on the RSSA.  *See generally* Def. Anacostia's Mot., Ex. A ("Committee Report").  The Committee Report demonstrates that the Applicability provision was absent from the original bill and was added in committee as a clarification "in order to avoid potential constitutional problems related to the impairment of contracts."  Committee Report at 10.  Thus, the Committee Report makes it clear that the "Applicability" provision was intended to limit rather than expand the applicability of the statute.  Additionally, the fact that the committee

limited the application of the RSSA to avoid "constitutional problems related to the impairment

of contracts" does not suggest that the committee assumed that the statute would apply

retroactively, as issues of contractual impairment could plainly arise even if the statute only

applied prospectively, due to the possibility that transactions anticipated by contracts executed

before April 1, 2009 would close after the Act became law.[2]

      Furthermore, a construction of the statute that applies it only prospectively is supported

by District of Columbia law regarding retroactive legislation.  D.C. law disfavors statutory

interpretations which "'impose new duties with respect to transactions already completed,'"

*Holzsager v. D.C. Alcoholic Beverage Control Bd.*, 979 A.2d 52, 57 (D.C. 2009) (quoting

*Landgraf*, 511 U.S. at 280).  Such "true retroactive application[s]" of a statute, *Redman*, 972

A.3d at 319 n.4, are distinguished from retroactive applications of laws which merely "provide

for changes in procedure" for adjudicating the significance of prior conduct and are generally

acceptable, *Duvall v. United States*, 676 A.2d 448, 450 (D.C. 1996); *see also Holzsager*, 979

A.2d at 58 (concluding that laws that affect only procedures rather than substantive rights can be

applied to conduct that preceded their enactment).  To apply the RSSA retroactively would

create a new duty – the duty to offer a right of first refusal – for transactions fully consummated

when the Act became law, making an interpretation of the Act and would thus be presumptively

inappropriate under *Holzsager*.  979 A.2d at 57.  Indeed, the District of Columbia Court of

---

[2]    The Committee Report does indicate that at least one councilmember viewed the RSSA as an "urgent measure" and hoped that it would apply to the "proposed sale by Exxon of its interests in the District's retail service stations."  Committee Report at 9.  The issue, however, is not whether the Council hoped the RSSA would cover a particular anticipated transaction that, as it turns out, occurred before the statute became effective, but instead whether, at the time that the RSSA was passed, the Council intended that it apply retroactively and drafted the statute to make that intention clear.  *Cf. Landgraf v. USI Film Products*, 511 U.S. 244, 285 (1994) (concluding that even if the "retroactive application of a new statute would vindicate its purpose more fully. . . [t]hat consideration . . . is not sufficient to rebut the presumption against retroactivity").  Nothing in the Committee Report discusses retroactivity or suggests that the Council intended the statute to apply retroactively.  *See generally* Committee Report.

Appeals has stated that the retroactive application of statutes is particularly disfavored "in cases between private individuals, involving legislation that 'purely affects the individual rights of two private parties vis a vis one another.'" *Id.* at 58 (quoting *Scholtz P'ship v. D.C. Rental Accommodations Comm'n*, 427 A.2d 905, 915 (D.C. 1981)). The RSSA affects private rights exclusively by creating a right exercisable by a franchisee to intervene in a private transaction. D.C. CODE § 36-304.12. Thus, an interpretation of the Act that would lead to a retroactive application is disfavored under District of Columbia law.[3]

In sum, because the RSSA contains no express retroactivity language and is devoid of any clear implication that it was intended to apply retroactively, and because the Act is the sort of legislation for which retroactive application is particularly disfavored in the District of Columbia, the court concludes that the RSSA does not apply retroactively to the transaction at issue in this case. The court therefore dismisses the Count I of the complaint for failure to state a claim for which relief can be granted. Furthermore, because the plaintiff's civil conspiracy claims in Count II are based entirely on the defendants' alleged violations of the RSSA, *see* Compl. ¶¶ 30-31, the court also dismisses Count II for failure to state a claim, *see Paul v. Howard Univ.*, 754 A.2d 297, 310 n.27 (D.C. 2000) (noting that civil conspiracy is only a means for establishing vicarious liability for an underlying unlawful act).

---

[3]      The plaintiff argues that *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008), and *Holzsager v. District of Columbia Alcoholic Beverage Control Board*, 979 A.2d 52 (D.C. 2009) support the retroactive application of the RSSA. *See* Pl.'s Opp'n to Def. Anacostia's Mot. at 16. Neither case is analogous to the issue before the court. The statute at issue in *Beretta* explicitly applied to claims already in existence at the time the statute became law, and the D.C. Court of Appeals merely concluded that the explicitly retroactive statute was constitutional. *See Beretta U.S.A. Corp.*, 940 A.2d at 174; *see also Langraf*, 511 U.S. at 272 (noting that "while the *constitutional* impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule" when a statute is not explicitly retroactive). As for *Holzsager*, it concerned the retroactive application of a new procedure for adjudicating existing rights, which the District of Columbia Court of Appeals explicitly distinguished from the retroactive application of legislation affecting substantive rights. *See Holzsager*, 979 A.2d at 58. The case before the court concerns substantive legislation that is not explicitly retroactive. Accordingly, the holdings of *Beretta* and *Holzsager* are inapposite to the issue before the court.

**2. The Plaintiff Has Not Stated a Claim For Unlawful Termination under the PMPA**

The plaintiff alleges in Count III of its complaint that the assignment of its franchise agreement constituted an unlawful termination under the PMPA. Compl. ¶ 34. The plaintiff contends that because the assignment of its franchise agreement occurred in violation of state law, the assignment amounted to a constructive termination of its franchise agreement actionable under the PMPA. *Id.* The ExxonMobil defendants argue that because the plaintiff does not allege that it has lost its right to use the Exxon trademark, its access to Exxon-branded fuel or its right to occupy the service station premises, it has not stated a claim for unlawful termination of the franchise agreement. ExxonMobil Defs.' Mot. at 5. The plaintiff responds that an assignment in violation of state law constitutes an alternative independent basis for an unlawful termination claim. Pls.' Opp'n to ExxonMobil Defs.' Mot. at 15.

The assignment of a franchise agreement does not itself constitute a termination of the agreement under the PMPA. *Beachler v. Amoco Oil Co.*, 112 F.3d 902, 906 (7th Cir. 1997); *May-Som Gulf, Inc. v. Chevron U.S.A.*, 869 F.2d 917, 922 (6th Cir. 1989). Rather, to state a claim under the PMPA for unlawful termination of a franchise agreement, the plaintiff must allege that the "franchisor's conduct forced an end to the franchisee's use of the franchisor's trademark, purchase of the franchisor's fuel, or occupation of the franchisor's service station." *Mac's Shell Serv. v. Shell Oil Prods. Co.*, 130 S. Ct. 1251, 1257-58 (2010) (observing that "a franchisee who continues operating a franchise . . . has not had the franchise terminated in either the ordinary or technical sense of the word" (internal quotation marks omitted)). To the extent that franchisor misconduct violates state law but does not interrupt any of the three statutory components of the franchise, franchisees are restricted to state law remedies. *Id.* at 1260. This rule applies even if the plaintiff is alleging a constructive termination rather than an actual

termination.  *Id.* at 1257-59.  Thus, if a franchisee does not allege an interruption in its use of the

franchisor's trademark, its right to purchase branded motor fuel or its right to occupy the station

premises, it does not state a claim for unlawful termination under the PMPA.  *Fresher v. Shell*

*Oil Co.*, 846 F.2d 45, 47 (9th Cir. 1988) (per curium).

The plaintiff in this case does not allege that the assignment resulted in an interruption of

its use of the Exxon trademark, supply of Exxon-branded fuel or occupancy of the station

premises.  *See generally* Compl.  Accordingly, because the plaintiff does not allege that the

assignment of its franchise agreement interrupted any of the three statutory components of a

gasoline franchise, the court concludes that the complaint does not state a claim for unlawful

termination under the PMPA and dismisses Count III of the complaint for failure to state a claim

for which relief can be granted.

### 3.  The Plaintiff Has Not Stated a Claim for Unlawful Non-Renewal Under the PMPA

The plaintiff alleges in Count IV of its complaint that neither Anacostia nor the

ExxonMobil defendants have offered to enter into a new franchise agreement following the

expiration of the most recent franchise agreement, and that this failure constitutes an unlawful

non-renewal of its franchise relationship under the PMPA.  Compl. ¶ 38.  The defendants argue

that a claim for non-renewal under the PMPA, like a claim for termination, must be based on an

actual interruption in the franchisee's access to the franchisor's trademarks, branded gasoline or

station premises, and that the plaintiff has not alleged such an interruption.  ExxonMobil Defs.'

Mot. at 9; Def. Anacostia's Mot. at 21.  The plaintiff responds that the franchise agreement

expired, by its own terms, on August 1, 2009, when the July 31 extension deadline passed

without renewal.  Pl.'s Opp'n to ExxonMobil Defs.' Mot. at 22-24; Pl.'s Opp'n to Def.

Anacostia's Mot. at 20-23.  The plaintiff also argues that the fact that it has not been offered a

new, written franchise agreement shows that the franchise relationship no longer exists, because District of Columbia law requires that gas station franchise agreements be in writing for terms of at least one year. *Id.*

To obtain relief for unlawful non-renewal of a franchise relationship, the plaintiff must allege "that the franchisor did not reinstate, continue, or renew the franchise relationship once a franchise agreement expired." *Mac's Shell Serv.*, 130 S. Ct. at 1262 (citing 15 U.S.C. § 2802) (internal quotation marks omitted). Even if a franchise agreement has expired and the franchisor has not signed or offered to sign a new agreement, a franchisee has no claim for non-renewal under the PMPA as long as it retains permission to use the franchisor's trademarks, receive branded gasoline and occupy the franchisor's station. *See Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 860 (7th Cir. 2002) (concluding that a franchisee alleging non-renewal "must demonstrate that at least one of the three essential components of a petroleum franchise has been discontinued"); *Davis v. Gulf Oil Corp.*, 485 A.2d 160, 167 (D.C. 1984) (concluding that non-renewal has not occurred even after expiration of the existing franchise agreement "as long as the franchisor willingly permits the franchisee to maintain possession of the premises and continues to supply the franchisee with gasoline pursuant to the agreement"). Furthermore, although D.C. Code § 36-303.01(a)(10) requires gas station franchise agreements to be in writing and for a minimum term of one year, this state law requirement does not change the prerequisites for a successful claim under the PMPA.[4] *See Davis*, 485 A.2d at 167 n.5. (concluding that claims for breaches of the D.C. Code's minimum franchise duration requirement must be brought under

---

[4] The defendants' alleged violation of this provision might, of course, support a claim under the District of Columbia law itself, but the plaintiff has not pursued such a claim in any of its filings before the court. *See generally* Compl.; Pl.'s Opp'n to ExxonMobil Defs' Mot.; Pl.'s Opp'n to Def. Anacostia's Mot.

D.C. law, not the PMPA); *see also Mac's Shell Serv.*, 130 S. Ct. at 1260 (declining to interpret the PMPA as federalizing violations of state laws regulating franchise agreements).

As noted above, the plaintiff does not allege an interruption in its right to use the Exxon trademark, its access to Exxon-branded fuel or its occupancy of the station premises.  *See supra* Part III.B.2.  Accordingly, the court concludes that the complaint does not state a claim for unlawful non-renewal under the PMPA and dismisses Count IV of the complaint for failure to state a claim for which relief can be granted.

### 4.  The Plaintiff Has Not Stated a Claim for Breach of the Franchise Agreement

The plaintiff alleges in Count V of its complaint that ExxonMobil Oil's assignment of its franchise agreement to Anacostia constituted a breach of contract because the assignment materially altered the plaintiff's rights under the agreement.  Compl. ¶ 41.  In their motion, the ExxonMobil defendants argue that the assignment did not amount to a breach of contract because the franchise agreement expressly permitted ExxonMobil Oil to assign all or part of its rights or obligations under the agreement without restriction.  ExxonMobil Defs.' Mot. at 10.

The validity of an assignment of a retail gas station franchise agreement is a matter of state law.  *See* 15 U.S.C. § 2806(b) (reserving to the states the power to authorize or prohibit the assignment of franchise agreements).  Under District of Columbia law, contractual rights are presumptively assignable, and that presumption cannot be overcome "[u]nless a contract contains 'clear, unambiguous language' prohibiting an assignment."  *Peterson v. D.C. Lottery & Charitable Games Control Bd.*, 673 A.2d 664, 667 (D.C. 1996) (quoting *Flack v. Laster*, 417 A.2d 393, 399 (D.C. 1980)).  Far from unambiguously prohibiting assignment, the franchise agreement at issue in this case expressly permits it, providing that "ExxonMobil may transfer or assign all or part of its rights or interest in this Agreement . . . without restriction, to any person

13

or entity."[5]  ExxonMobil Defs.' Mot., Ex. 1 at 31.[6]  Accordingly, the plain language of the franchise agreement indicates that the assignment did not constitute a breach.

The plaintiff argues that the scope of the assignment clause of the franchise agreement is constrained by the assignment provision of the District of Columbia's version of the Uniform Commercial Code ("UCC"), which provides that "[u]nless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would . . . increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance."  D.C. CODE § 28:2-210(2).  The plaintiff contends that the assignment of its franchise agreement is invalid under this provision because the assignment has materially increased both the burdens imposed upon it and the risk that it will not obtain return performance.  *See* Pl.'s Opp'n to ExxonMobil Defs.' Mot. at 15.  Specifically, the plaintiff alleges that since the assignment, Anacostia has raised the price charged for fuel, demanded payment in advance instead of cash on delivery and withdrawn excessive funds from its bank account.  Compl. ¶ 26.  The plaintiff also alleges that the assignment to Anacostia imposes a risk that Anacostia will force the plaintiff out of business and run the gas station itself.  *Id.* ¶ 22.

---

[5]     The plaintiff asks the court to delay determining the meaning of this provision of the franchise agreement to allow it to prove that the provision was intended to allow assignment only to other refiners and not to a distributor.  Pl.'s Opp'n to ExxonMobil Defs.' Mot. at 17.  The express terms of the provision exclude such an interpretation, however, by specifying that assignment can occur "without restriction, to any person or entity."  ExxonMobil Defs.' Mot., Ex. 1 at 31; *see also Lumpkins v. CSL Locksmith, LLC*, 911 A.2d 418, 422 (D.C. 2006) (noting that the presence of ambiguity in a contract is a question of law and that extrinsic evidence is inadmissible to prove the meaning of an unambiguous contractual term).

[6]     Although the franchise agreement was not an exhibit to the complaint, the plaintiff referenced it throughout the complaint as a central part of its claims.  *See, e.g.*, Compl. ¶¶ 9-11.  Accordingly, the court can consider the agreement without converting this motion to dismiss into a motion for summary judgment.  *See Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (concluding that courts can consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff but by the defendant in a motion to dismiss" (internal quotation marks omitted) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998))).

Yet each of the changes that Anacostia has allegedly implemented following the assignment of its franchise agreement is expressly permitted by the franchise agreement. *See* ExxonMobil Defs' Mot., Ex. 1 at 8 (providing that prices are subject to change "at any time and without notice"); *id.* at 9 (requiring prepayment in any specified manner unless credit is extended and authorizing the revocation of credit at any time). A gasoline distributor's decision to assert its rights under a franchise agreement more fully than the refiner had before the agreement was assigned does not invalidate the assignment under the UCC. *See Beachler*, 112 F.3d at 908 (applying an identical Illinois UCC provision and concluding that higher fuel prices and rents resulting from an assignment of a franchise agreement did not constitute a material increase in burden because the agreement expressly reserved to the franchisor the right to set prices and rents); *May-Som Gulf, Inc.*, 869 F.2d at 924 (applying an identical Ohio UCC provision and concluding that higher fuel prices and the elimination of a discount program were not increased burdens from an assignment because they were permitted by the contract); *Cedar Brook Serv. Station v. Chevron U.S.A., Inc.*, 746 F. Supp. 278, 283 (E.D.N.Y. 1990) (applying an identical New York UCC provision and concluding that "changes made by [the assignee] that were within [the assignor's] prerogative to make are . . . insufficient to show a burden or impairment flowing from the assignment").

As for the plaintiff's fear that Anacostia will force it out of business and run the station itself, the allegation is too speculative to invalidate the assignment. *See May-Som Gulf, Inc.*, 869 F.2d at 925 (concluding that speculative allegations of future misbehavior are insufficient to invalidate the assignment of a gas station franchise agreement). This is true even though the plaintiff alleges that the assignment has put it in the awkward position of buying its inventory from a competitor, as nothing about that competition constitutes a breach of the franchise

agreement.[7]  *See Ackley v. Gulf Oil Corp.*, 726 F. Supp. 353, 363 (D. Conn. 1989) (concluding that the fact that a distributor, unlike a refiner, was permitted to compete directly with its franchisees did not invalidate the assignment of a franchise agreement to a distributor); *cf.* MURRAY ON CONTRACTS § 138(A)(2) (4th ed. 2001) (noting that "[t]he fact that the assignee can be shown to be *persona non grata* to the obliger" is irrelevant to the legality of an assignment).

Accordingly, because the franchise agreement expressly permits assignment and because the plaintiff's allegations of increased risks and burdens as a result of the assignment are permitted by the agreement, the court concludes that the assignment did not breach the franchise agreement and dismisses Count V of the complaint for failure to state a claim for which relief can be granted.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motions to dismiss for failure to state a claim for which relief can be granted.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of July, 2010.

RICARDO M. URBINA
United States District Judge

---

[7]     To the extent that Anacostia sets prices in bad faith or otherwise performs in bad faith, the plaintiff may be able to assert a claim against it for breach of contract under District of Columbia law.  *See* D.C. CODE § 28:2-305 (requiring open price terms to be set in good faith); *id.* § 28:2-103 (requiring performance under contracts for the sale of goods to accord with standards of good faith and fair dealing).  Similarly, to the extent that Anacostia cuts off any of the three statutory elements of PMPA franchise agreement, the plaintiff may be able to bring a PMPA claim against it.  *See* 15 U.S.C. § 2805 (authorizing private rights of actions by franchisees against franchisors). The claims which the plaintiff asserts in this action, however, relate only to the legality of the assignment itself and not to the legality of Anacostia's behavior following assignment.  *See generally* Compl.